UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

KENT SINGER; THOMAS NOLLNER; and
JONATHAN DECKER,

                  Plaintiffs,

  -v-                                                        1:09-CV-690

CHRISTOPHER C. FERRO, in his individual
capacity; JON BECKER, in his individual
capacity; PAUL J. VAN BLARCUM, Ulster
County Sheriff, in his individual capacity;
JAMES R. HANSTEIN, Superintendent of
Corrections, in his individual capacity;
FRANK FALUOTICO, in his individual capacity;
and COUNTY OF ULSTER,

                  Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                                     OF COUNSEL:

BERGSTEIN & ULLRICH, LLP              STEPHEN BERGSTEIN, ESQ.
Attorneys for Plaintiffs
15 Railroad Avenue
Chester, NY 10919

ROEMER WALLENS GOLD & MINEAUX LLP    EARL T. REDDING, ESQ.
Attorneys for Defendants
13 Columbia Circle
Albany, NY 12203

DAVID N. HURD
United States District Judge

**MEMORANDUM-DECISION and ORDER**

## I. INTRODUCTION

Plaintiffs Corporal Kent Singer ("Cpl. Singer"), Corrections Officer Thomas Nollner ("CO Nollner"), and Corrections Officer Jonathan Decker ("CO Decker") (collectively "plaintiffs") bring this action against defendants Sergeant Christopher C. Ferro ("Sgt. Ferro"), Captain Jon Becker ("Cpt. Becker"), Ulster County Sheriff Paul J. Van Blarcum ("Sheriff Van Blarcum"), Superintendent of Corrections James R. Hanstein ("Superintendent Hanstein"), Ulster County Undersheriff Frank Faluotico ("Undersheriff Faluotico"), and the County of Ulster ("County") (collectively "defendants") under Title 42, United States Code, section 1983.  Plaintiffs contend defendants violated the First Amendment to the United States Constitution by retaliating against them for their protected speech and associations.

Defendants moved for summary judgment pursuant to Federal Rule of Civil Procedure 56 ("Rule __").  Plaintiffs opposed and moved to file a supplemental complaint pursuant to Rule 15.  The motions were considered on their submissions without oral argument.

## II. BACKGROUND

In September 2008, during his employment hours and on a work computer, Cpl. Singer created a parody using the well-known Absolut Vodka advertisement.  A computer program allowed him to rename the advertisement "Absolut Corruption."  Acting alone, he pasted the faces of four jail supervisors inside the vodka bottle:  defendant Sgt. Ferro, defendant Cpt. Becker,  Warden Ray Acevedo ("Warden Acevedo"), and then-Superintendent of Corrections Brad Ebel ("Former Superintendent Ebel").  A copy of the parody is attached to this decision as Addendum "A."

After creating the parody, Cpl. Singer showed it to five colleagues in or near the control room of the Ulster County Jail: James Dugan, Bradley Higgins, Matthew Bogart, plaintiff CO Nollner, and plaintiff CO Decker. Plaintiff CO Nollner disputes that Cpl. Singer showed him the parody. Shortly after showing his co-workers the parody, Cpl. Singer threw the parody in the garbage in the control room. According to him, he did not intend to show the parody to any of his supervisors or to make it public.

Cpl. Singer believed certain individuals at the jail were corrupt, including those portrayed in the parody. According to him, "[i]t was a political statement. I thought it was funny." Redding Aff., Ex. C., Dkt. No. 50-4, 24 ("Singer Dep."). The alleged unethical conduct at the jail included Former Superintendent Ebel pre-arranging promotions of defendant Cpt. Becker and defendant Sgt. Ferro without appropriate procedures or interviews; promotion of Cpt. Becker to lead the Sheriff's Emergency Response Team ("SERT")[1] without enough supervisory experience; Cpt. Becker's dual role as head of SERT and Internal Affairs which created a conflict of interest because Internal Affairs investigates complaints against officers; and Cpt. Becker and Sgt. Ferro's friends at the jail receiving job-related perks, such as special assignments and equipment. Cpl. Singer also believed Warden Acevedo was corrupt because he was once arrested for soliciting a prostitute and thought defendant Sgt. Ferro was a womanizer who manipulated schedules to give his friends time off, which resulted in payroll discrepancies. Despite another officer, Sergeant

---

[1] The SERT team is called to respond when there is a problem with an inmate. They move inmates from one pod to another and are also responsible for high security transports. Membership on SERT is voluntary but officers have to qualify to join. According to plaintiffs, it is regarded as an elite unit and officers receive overtime pay for SERT training (twice a month). As officers have to apply and pass a physical, it is also a prestigious position. CO Nollner testified, "[i]t's a good deal to have." Redding Aff., Ex. A, Dkt. No. 50-2, 13. Similarly, Sgt. Ferro and Acevedo testified that officers aspire to join the elite unit.

Kerry Winters ("Sgt. Winters"), alerting Former Superintendent Ebel of the payroll issues, no misconduct was charged in connection with the discrepancies.

One day after discarding the parody, Cpl. Singer learned that someone retrieved it from the garbage and posted it on a bulletin board in the jail. According to Sgt. Winters, defendant Sgt. Ferro saw the parody on the bulletin board and he and defendant Cpt. Becker were upset by it. Sgt. Ferro heard that Cpl. Singer was the one who created it. Sgt. Ferro then sent the parody to Warden Acevedo for an investigation. Warden Acevedo testified that he found the parody disturbing, but did not think it violated jail rules or regulations. No further investigation was conducted.

On September 25-26, 2008, shortly after creating the parody, Cpl. Singer was assigned to prisoner transports. The assignments were made by defendant Sgt. Ferro and another corporal, subject to the watch commander's deferential review. Assignment to prisoner transports involves taking prisoners to and from court, the hospital, and other places. Officers are sometimes required to work overtime and cancel personal obligations to complete the transports. Prior to this time, Cpl. Singer was assigned to prisoner transports on occasion. However beginning in April 2008 when his mother became ill, he was not assigned to prisoner transports at his request.[2]

On October 1, 2008, Cpl. Singer met with defendant Cpt. Becker. Cpl. Singer took a micro-cassette recorder to the meeting in Cpt. Becker's office, which was not in a secure part of the jail. According to Cpl. Singer, "I had no idea what I was getting into" and "heard that [defendants Cpt. Becker and Sgt. Ferro] were head-hunting over this [parody]." Singer Dep.,

---

[2] Cpl. Singer was responsible for looking after his mother's health needs and driving her to the doctor and emergency room. He did so from April 2008 until her death in November 2008. By not being assigned to prisoner transports, Cpl. Singer was free to handle his mother's medical emergencies.

77-78, 80-82. Without telling defendant Cpt. Becker, Cpl. Singer secretly recorded the conversation. At the meeting, Cpl. Singer informed Cpt. Becker he could not perform prisoner transports anymore because of his mother's health problems and requested that his work be limited to inside the facility. Cpt. Becker granted the request. Cpt. Becker then told Cpl. Singer that he knew Cpl. Singer was the one who created the parody, even though he could not prove it. He also suspected, since they were all friends, that plaintiffs CO Decker and CO Nollner were in the room when Cpl. Singer created it. Cpt. Becker believed CO Decker and CO Nollner had a duty to report Cpl. Singer's misconduct to their supervisors.

According to Cpl. Singer, he left Cpt. Becker's office without turning off the recorder. Because he did not know how to work the device, he showed it to another officer in the control room (a secure part of the facility) who helped him turn it off. He contends he did not play the recording to that officer or to anyone else. According to defendants, Cpl. Singer disclosed the body of his conversation with Cpt. Becker to plaintiff CO Nollner and another subordinate officer.

The cassette tape was produced in discovery in this case pursuant to Rule 26. After learning about the recording, jail officials investigated Cpl. Singer's conduct and found it violated jail rules and regulations. Cpl. Singer was charged, pursuant to New York Civil Service Law section 75, with violating a jail rule prohibiting the installation of a microphone or device in the building (Charge 1); a jail rule prohibiting staff from bringing electronic devices into secure areas (Charge 2); and with "conduct unbecoming" of a corrections supervisor for allegedly sharing the recording with his subordinates (Charge 3).

A disciplinary hearing was held on June 17, 2010. Since the filing of defendants' motion for summary judgment on January 14, 2011, the Hearing Officer rendered findings of

fact and a penalty recommendation. On January 17, 2011, the Hearing Officer issued a decision finding Cpl. Singer not culpable of Charge 1 but culpable of Charges 2 and 3. He recommended a penalty of ten days suspension without pay. In a February 15, 2011, letter to Cpl. Singer, defendant Sheriff Van Blarcum rejected the Hearing Officer's recommendation and instead terminated Cpl. Singer.

Plaintiffs CO Nollner and CO Decker also allege they were retaliated against after Cpl. Singer created the parody. According to CO Decker, on October 24, 2008, defendant Sgt. Ferro threatened him after he requested to take sick time. CO Decker testified that Sgt. Ferro accused him of helping to create the parody and told him they would "deal with this the old fashioned way" and "take it outside." Redding Aff., Ex. B, Dkt. No 50-3, 62-64. Sgt. Ferro testified that he did not believe plaintiffs CO Decker nor CO Nollner had anything to do with the parody, and that he raised his voice to CO Decker because CO Decker was bullying other officers.

Plaintiffs CO Nollner and CO Decker contend they were further harassed at a SERT meeting led by defendant Cpt. Becker in March 2009. CO Nollner and CO Decker were on SERT for approximately ten years. They contend that at the meeting, Cpt. Becker accused SERT members of being in the room when Cpl. Singer made the parody and said that he wanted to kick some officers off the SERT team. CO Nollner indicated at the meeting that he had nothing to do with the parody, but defendant Sgt. Ferro said he did not trust him nor CO Decker to handle SERT functions, in part, because of the parody.

Plaintiffs filed this action on June 15, 2009. Two weeks later, Warden Acevedo removed plaintiffs CO Nollner and CO Decker from SERT, at defendant Undersheriff Faluotico's direction. Warden Acevedo told the officers that they were suspended from

SERT pending the instant litigation. According to defendant Cpt. Becker, the lawsuit created tension among SERT members which resulted in trust issues, making it difficult to "run a formidable paramilitary team when you know two members are suing you for something." Redding Aff., Ex. E, Dkt. No. 50-7, 53-54. Defendant Undersheriff Faluotico testified that he removed the plaintiffs from SERT because "[t]he lawsuit had caused a breakdown in communication which was a breakdown in officer safety and therefore everyone's safety." Redding Aff., Ex. G, Dkt. No. 50-9, 16.

In their amended complaint, plaintiffs allege the following under § 1983: 1) that after making the parody, Cpl. Singer was retaliated against in violation of the First Amendment right to free speech by being reassigned to prisoner transports; 2) that after filing this lawsuit, Cpl. Singer was retaliated against in violation of the First Amendment right to free speech by the commencement of disciplinary charges against him for an infraction which similarly situated officers were not disciplined for; 3) that after Cpl. Singer made the parody, CO Nollner and CO Decker were retaliated against in violation of the First Amendment right to freely associate by being subjected to verbal abuse and false allegations; and 4) that after filing this lawsuit, CO Nollner and CO Decker were retaliated against in violation of the First Amendment right to free speech by being removed from SERT.

## III. **DISCUSSION**

Defendants move for summary judgment dismissing Cpl. Singer's freedom of speech claims on the grounds that his alleged speech is not protected, he suffered no adverse actions, and there was no causal connection between the speech and actions. Defendants contend CO Nollner and CO Decker cannot prevail on freedom of association claims merely because they are friends with Cpl. Singer at the jail. They also assert the filing of this lawsuit

is not protected and thus CO Nollner and CO Decker's free speech claim must fail. Defendants further argue defendants Sheriff Van Blarcum and Superintendent Hanstein must be dismissed for lack of personal involvement and the remaining individual defendants are entitled to qualified immunity.  In response, plaintiffs withdraw all claims against defendant Superintendent Hanstein.

Plaintiffs move to file a supplemental complaint incorporating Cpl. Singer's wrongful discharge claim, which accrued (in February 2011) after plaintiffs filed their amended complaint in December 2009.

### A.  **Legal Standard—Motion for Summary Judgment**

Summary judgment is warranted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S. Ct. 2505, 2509-10 (1986).  All facts, inferences, and ambiguities must be viewed in a light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986).

Initially, the burden is on the moving party to demonstrate the absence of a genuine issue of material fact.  Fed. R. Civ. P. 56; Liberty Lobby, Inc., 477 U.S. at 250, 106 S. Ct. at 2511.  A fact is 'material' if it "might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248, 106 S. Ct. at 2510; see also Jeffreys v. City of N.Y., 426 F.3d 549, 553 (2d Cir. 2005).  The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., 475 U.S. at

586, 106 S. Ct. at 1356. There must be sufficient evidence upon which a reasonable fact finder could return a verdict for the non-moving party. Liberty Lobby, Inc., 477 U.S. at 248-49, 106 S. Ct. at 2510; Matsushita Elec. Indus. Co., 475 U.S. at 587, 106 S. Ct. at 1356.

### 1. Plaintiff Cpl. Singer

### a. Parody

Defendants move to dismiss Cpl. Singer's First Amendment retaliation claim on the ground that the parody was not protected speech because it did not relate to a matter of public concern. They argue Cpl. Singer created the parody because of purely internal reasons and his own dissatisfaction with the conditions of his employment. Further, he did not intend to show the parody to anyone or to make it public. Therefore, they maintain Cpl. Singer was not speaking on a matter of public concern. They also dispute that the reassignment to prisoner transports was an adverse employment action—they contend it was actually a preferable assignment. Finally, defendants assert there was no causal connection between the creation of the parody and Cpl. Singer's reassignment.

Cpl. Singer argues the parody was protected speech because it addressed municipal corruption which is a matter of public concern. He disputes that his grievances about the jail corruption related to his specific employment or ill-treatment towards himself—instead he alleges the favoritism and corruption in general affected other officers and hurt morale. He maintains that simply because he has a personal interest in the subject matter does not mean his speech is unprotected. Cpl. Singer also contends that his reassignment to prisoner transports was an adverse employment action because of his obligations to his sick mother. Finally, he claims the decision to assign him to prisoner transports was motivated by his making the parody.

To establish a retaliation claim in violation of the First Amendment right to free speech, a plaintiff must show:  (1) his speech addressed a matter of public concern; (2) he suffered an adverse employment action; and (3) a causal connection between the protected speech and the adverse employment action.  Singh v. City of N.Y., 524 F.3d 361, 372 (2d Cir. 2008). "Whether public employee speech is protected from retaliation under the First Amendment entails two inquiries:  (1) 'whether the employee spoke as a citizen on a matter of public concern' and, if so, (2) 'whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public.'"  Ruotolo v. City of N.Y., 514 F.3d 184, 188 (2d Cir. 2008) (quoting Garcetti v. Ceballos, 547 U.S. 410, 418, 126 S. Ct. 1951, 1958 (2006)).

"[P]ublic concern is something that is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public at the time of publication." City of San Diego, Cal. v. Roe, 543 U.S. 77, 83-84, 125 S. Ct. 521, 525-26 (2004). Determining if "'an employee's speech addresses a matter of public concern is a question of law for the court to decide, taking into account the content, form, and context of a given statement as revealed by the whole record.'"  Ruotolo, 514 F.3d at 189 (quoting Lewis v. Cowen, 165 F.3d 154, 163 (2d Cir. 1999)).  The inquiry is "whether the employee's speech was 'calculated to redress personal grievances or whether it had a broader public purpose.'" Id. (quoting Lewis, 165 F.3d at 163-64).

In considering the content, form, and context of the speech, a court may evaluate the manner in which the employee made the speech, such as whether it was made publicly or privately.  See Dorcely v. Wyandanch Union Free Sch. Dist., 665 F. Supp. 2d 178, 210 (E.D.N.Y. 2009).  Further, while an employee's motivation for making the statements at issue

is not dispositive, it may be considered. See Burns v. Cook, 458 F. Supp. 2d 29, 40 (N.D.N.Y. 2006) (Hurd, J.) (concluding speech was not protected where the plaintiff spoke in a private and direct matter with no apparent intention of voicing her discontent to the public at large).

In Dorcely, the plaintiff (a school psychologist) alleged he was retaliated against after he wrote a letter complaining about the poor conditions for Haitian students and their treatment in the defendant school district. The court determined his speech was not protected because there was no evidence, "aside from Plaintiff's conclusory statements in his opposition papers and Complaint, that this speech was designed to reveal District-wide discrimination or to address the impact of discrimination on the school environment." Dorcely, 665 F. Supp. 2d at 210. The court noted there was "no evidence that Dorcely's speech was voiced to the public at large or had a broader public purpose." Id.

A defendant's conduct constitutes adverse employment action, with regard to a First Amendment retaliation claim, if the conduct "would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights." Zelnik v. Fashion Inst. of Tech., 464 F.3d 217, 225 (2d Cir. 2006) (internal quotations omitted). Thus, in addition to "discharge, refusal to hire, refusal to promote, demotion, reduction in pay, and reprimand," less severe actions such as "negative evaluation letters, express accusations of lying, assignment of lunchroom duty, reduction of class preparation periods, failure to process teacher's insurance forms, transfer from library to classroom teaching as an alleged demotion, and assignment to classroom on fifth floor which aggravated teacher's physical disabilities" can be considered adverse employment actions. Id. at 226.

Finally, a causal connection between the protected speech and the adverse employment decision may be established with direct evidence of retaliatory animus or circumstantial evidence such as temporal proximity. Morris v. Lindau, 196 F.3d 102, 110 (2d Cir. 1999).

Taking into account the content, form, and context of the parody, as well as Cpl. Singer's apparent motivation for engaging in it, his speech is not related to a matter of public concern. As can be readily seen from a review of the parody attached to this decision as Addendum "A," it does not communicate a matter of public concern. It merely shows the photographs of four people's faces cut and pasted inside a vodka bottle with the words "Absolut Corruption" printed below the bottle. It is entirely unclear who the people are or what is corrupt. None of the four individuals on the bottle are identified by name. There are no words or graphics suggesting who or what is corrupt, and there is no indication that the corruption relates to the Ulster County Jail or the Ulster County Sheriff's Department.

Additionally, Cpl. Singer communicated this speech in a private manner with no apparent intention of voicing his discontent to the public at large. He admitted he did not intend to show it to any of his supervisors or to make it public. This is further evidenced by his disposal of the parody in the garbage after showing it to five of his colleagues. It would likely never have been seen by anyone beside Cpl. Singer's five colleagues had it not been removed from the garbage by someone else. There is nothing in the record, aside from Cpl. Singer's post-speech allegations in the complaint and conclusory statements in opposition to summary judgment, to suggest his speech was designed to address a matter of public concern. To the contrary, like in Burns, there is no evidence which indicates that Cpl. Singer was motivated by anything other than his own personal interests. The fact that his speech

concerned municipal corruption, which may be a matter of public concern generally, is not enough to make the parody protected speech. Cpl. Singer was not speaking as a concerned citizen; rather, he created the parody for entertainment purposes and in fact, admittedly thought the parody was funny. Accordingly, Cpl. Singer's speech is not protected.

Because Cpl. Singer's creation of the parody is not protected, he cannot satisfy the first element of a First Amendment retaliation claim. There is no need to consider whether his reassignment to prisoner transports was an adverse employment action or whether there was a causal connection. Accordingly, his claim that he was retaliated against for making the parody will be dismissed.

### b. Lawsuit

Defendants also move to dismiss Cpl. Singer's First Amendment retaliation claim related to the filing of this lawsuit. They contend the lawsuit is not protected speech because it does not relate to a matter of public concern. Cpl. Singer argues that the filing of this lawsuit in June 2009 was protected speech and that the disciplinary charges brought against him in July 2009 pursuant to New York Civil Service Law section 75 was an adverse employment action taken because of the lawsuit. Defendants concede that the initiation of disciplinary charges may constitute an adverse employment action, but argue there was no connection between the filing of the lawsuit and the disciplinary charges. Instead, they contend the charges were brought solely because Cpl. Singer violated the jail's rules and regulations regarding the introduction of a recording device in the facility.

"The filing of litigation alone does not automatically constitute protected speech." Miller v. City of Ithaca, No. 3:10-cv-597, 2010 WL 3809842, at *11 (N.D.N.Y. Sept. 22, 2010)

(McAvoy, S.J.) (citing Ruotolo, 514 F.3d at 189). Instead, the basis for the lawsuit must implicate matters of public concern. Id.

While the original June 2009 complaint and subsequent December 2009 amended complaint contain actual allegations of corruption, unlike the September 2008 "Absolut Corruption" parody, the lawsuit still does not qualify as speech on a matter of public concern. The lawsuit did not arise out of or relate to any matters of public concern. The parody did not implicate a matter of public concern for the reasons previously explained. Further, Cpl. Singer's grievances about the disciplinary charges brought against him are entirely personal in nature and relate to his own employment situation. His alleged violation of the jail's rules and regulations and the subsequent investigation and disciplinary action do not implicate matters of public concern. Therefore, the filing of the amended complaint cannot serve as the basis for a First Amendment retaliation claim.

Accordingly, Cpl. Singer's claim that he was retaliated against for filing this lawsuit will be dismissed.

### 2. Plaintiffs CO Nollner and CO Decker

#### a. Parody

Defendants move to dismiss CO Nollner and CO Decker's First Amendment retaliation claims on the ground that they do not have the ability to assert a § 1983 claim to vindicate Cpl. Singer's rights. They argue CO Nollner and CO Decker cannot assert a claim of retaliation based on Cpl. Singer's creation of the parody. CO Nollner and CO Decker argue that Cpl. Singer engaged in protected speech by creating the parody, and they were retaliated against because of their association with Cpl. Singer at the jail. Specifically, CO Decker contends defendant Sgt. Ferro physically threatened him and verbally abused him because

he believed he was involved in creating the parody. CO Decker and CO Nollner also assert they were berated in front of other members of the SERT team because of the parody and were told by defendant Cpt. Becker that they could not be trusted. They also contend two less-senior employees with spotty disciplinary histories were chosen over them by defendants Sgt. Ferro and Cpt. Becker to be SERT team leaders.

"[I[n order to prevail on a First Amendment freedom-of-expressive-association claim, a government employee must show, inter alia, that his expressive association involved a matter of public concern-just as would a government employee complaining of a violation of his right to freedom of speech." Piscottano v. Murphy, 511 F.3d 247, 273 (2d Cir. 2007) (citing Cobb v. Pozzi, 363 F.3d 89, 102-07 (2d Cir. 2004)).

As previously discussed, the parody did not implicate a matter of public concern. Therefore, even if plaintiffs CO Nollner and CO Decker's relationship to Cpl. Singer was close enough to entitle them to freedom of association protection, the claim would still fail because their association with plaintiff Cpl. Singer did not relate to a matter of public concern.

Accordingly, CO Nollner and CO Decker's claim that they were retaliated against for associating with Cpl. Singer will be dismissed.

### b. Lawsuit

Defendants also move to dismiss CO Nollner and CO Decker's First Amendment retaliation claim related to the filing of this lawsuit. Defendants contend the lawsuit is not protected speech because it does not relate to a matter of public concern. CO Nollner and CO Decker argue that the filing of this lawsuit in June 2009 was protected speech and their removal from SERT on July 31, 2009, was in retaliation for filing the lawsuit. On that date,

Warden Acevedo issued a personnel order which removed CO Nollner and Decker from SERT while this lawsuit is pending, per defendant Undersheriff Faluotico's order.

Plaintiffs assert their removal from SERT was an adverse employment action because they served on the team for ten years and it was a prestigious assignment at the jail. Defendants contend plaintiffs CO Nollner and CO Decker were removed from SERT because of a tense working environment and breakdown in communication among SERT members during this lawsuit. According to defendant Undersheriff Faluotico, he received unsolicited concerns from two SERT members stating that there was a very tense working condition that could spill over if an incident were to happen in the jail and CO Nollner and CO Decker were to respond to it. Based on this, he contends the decision to remove CO Nollner and CO Decker from SERT was not in retaliation for the commencement of this lawsuit, but rather based on his reasonable prediction that disruption to SERT would result given the complaints from squad members.

As previously discussed, the filing of litigation is not by itself protected speech. Ruotolo, 514 F.3d at 189. Instead, the basis for the lawsuit must implicate matters of public concern. Id.

To the extent CO Nollner and CO Decker contend the allegations of corruption in the amended complaint—the favoritism, undeserved promotions, and conflicts of interest—relate to matters of public concern, that argument is rejected for the same reason Cpl. Singer cannot prevail on a First Amendment retaliation claim for filing this lawsuit. Further, CO Nollner and CO Decker's denial of SERT team leadership assignments and their removal from SERT are purely matters of personal concern. The alleged acts of retaliation in the

amended complaint affect only CO Nollner and CO Decker and the relief they seek is entirely personal to them.

Accordingly, CO Nollner and CO Decker's claim that they were retaliated against in violation of the First Amendment for filing this lawsuit will be dismissed.

### B. Legal Standard—Motion to File a Supplemental Complaint

Plaintiffs move to file a supplemental complaint incorporating Cpl. Singer's wrongful discharge claim, which accrued after plaintiffs filed their amended complaint in December 2009. They contend defendants would not be prejudiced by a supplemental complaint, the proposed supplemental complaint is not futile, and there is no undue delay or dilatory motive. Defendants argue they will be unduly prejudiced because Cpl. Singer failed to exhaust his administrative remedies. They assert they will have to now litigate whether the commencement of the disciplinary charges were retaliatory in addition to whether the charges are supported by substantial evidence and whether the penalty shocks one's sense of fairness.

Under Rule 15(d), "[o]n motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d). Supplementation may be permitted "even though the original pleading is defective in stating a claim or defense." Id. Initially, a court must consider whether "the supplemental facts connect it to the original pleading." Quaratino v. Tiffany & Co., 71 F.3d 58, 66 (2d Cir. 1995). If the facts are connected, leave to supplement should be "freely permitted" absent "undue delay, bad faith, dilatory tactics, undue prejudice to the party to be served with the proposed pleading, or futility." Id.

It is undisputed that the facts which plaintiffs seek to add are related to the original pleading and that they occurred after the filing of the amended complaint. The parties dispute whether defendants will be prejudiced by permitting the supplemental pleading. The proposed supplemental pleading adds facts relating to Cpl. Singer's February 2011 termination and alleges that his discharge was an excessive punishment under the circumstances, giving rise to a new cause of action for wrongful discharge in violation of the First Amendment.

Prejudice need not be determined because the supplemental pleading would be futile. The amended complaint alleges that the assignment to prisoner transports and commencement of disciplinary charges were in retaliation for engaging in the protected speech of creating the parody and filing this lawsuit. The new cause of action plaintiffs include in the proposed supplemental complaint is essentially no different than the First Amendment retaliation claims currently alleged in the amended complaint. The difference in the new cause of action alleging wrongful discharge is the adverse employment action taken—now termination, as opposed to assignment to prisoner transports or the initiation of disciplinary charges included the amended complaint. Cpl. Singer's alleged protected speech remains the same—the creation of the parody and the filing of this lawsuit. For the reasons discussed above, neither is protected by the First Amendment because the speech does not implicate matters of public concern.

Because the speech which forms the basis for Cpl. Singer's proposed new cause of action—wrongful discharge in violation of the First Amendment—is not protected, filing the proposed supplemental complaint would be futile. Accordingly, plaintiffs' motion to supplement the pleadings will be denied.

## IV. **CONCLUSION**

Plaintiff Cpl. Singer cannot prevail on his First Amendment retaliation claims because neither the "Absolut Corruption" parody nor the filing of this lawsuit implicate matters of public concern.  Therefore he did not engage in protected speech and defendants' motion for summary judgment will be granted and Cpl. Singer's claims dismissed.  Plaintiffs CO Nollner and CO Decker's freedom of association claim fails because their association with Cpl. Singer did not involve a matter of public concern.  Nor can their First Amendment retaliation claim based on the filing of this lawsuit survive because the lawsuit does not implicate matters of public concern.  Instead, the allegations in the amended complaint concern personal grievances about their employment at the jail.  Accordingly, defendants' motion for summary judgment will be granted and CO Nollner and CO Decker's claims dismissed.

Finally, plaintiffs' motion to file a supplemental pleading to add allegations relating to Cpl. Singer's discharge in February 2011, allegedly in violation of the First Amendment, will be denied because it would be futile.

Therefore, it is

ORDERED that

1. Defendants' motion for summary judgment is GRANTED;

2. Plaintiffs' motion to file a supplemental complaint is DENIED; and

    3.  The complaint is DISMISSED in its entirety.

The Clerk is directed to enter judgment accordingly and close the file.

IT IS SO ORDERED.

_____
United States District Judge

Dated:  September 12, 2011
         Utica, New York.